```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/14/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ELSIE AUGUSTE,

               Plaintiff,          06 Civ. 2895

  -against-                      OPINION

NEW YORK PRESBYTERIAN MEDICAL CENTER,

               Defendant.

------------------------------------X

A P P E A R A N C E S:

    Pro Se

    ELSIE AUGUSTE
    2141 Holland Avenue, Apt. #4L
    Bronx, NY  10462


    Attorneys for Defendant

    EPSTEIN BECKER & GREEN, P.C.
    250 Park Avenue
    New York, NY  10177
    By:  James S. Frank, Esq.
         Steven M. Post, Esq.

**Sweet, D.J.**

Defendant the New York and Presbyterian Hospital, sued as the New York Presbyterian Medical Center (the "Hospital" or the "Defendant"), has moved pursuant to Rule 56, Fed. R. Civ. P., for summary judgment dismissing the complaint of Elsie Auguste, pro se ("Auguste" or the "Plaintiff") alleging employment discrimination and retaliation. On the findings and conclusions set forth below, the motion of the Hospital is granted and the complaint is dismissed.

**Prior Proceedings**

On June 4, 2004,[1] Auguste filed a charge of discrimination with the New York City Commission on Human Rights ("NYCCHR"), which forwarded Auguste's charge to the Equal Employment Opportunity Commission ("EEOC"). On December 2, 2005, the EEOC issued a Notice of Right to Sue to Auguste at her request. Auguste's request to proceed in forma pauperis dated February 21, 2006, was granted on

---

[1] Although the NYCCHR charge does not indicate a filing date, the final charge was notarized on June 4, 2004. Auguste includes in her exhibits a complaint notarized on May 20, 2004, but the markings indicate that it is not the final verified complaint. For purposes of this motion, the June 4, 2004 date is used.

1

April 11, 2006.  Her complaint was filed with this Court on April 13, 2006.

Plaintiff's complaint alleges that the Hospital discriminated against her on the basis of her race, color, gender, national origin, age, and disability in connection with the terminations of her employment from the Hospital in November 2002 and November 2003.  An attachment to the complaint alleges that Auguste was subjected to harassment and discrimination during her employment in both 2002 and 2003 and with respect to both terminations, and that the November 2003 termination was in retaliation for having succeeded in her unemployment compensation benefits claim.

Discovery was undertaken and the instant motion was marked fully submitted on April 30, 2008.

**The Facts**

The facts are set forth in the Defendant's Local Rule 56.1 Statement and in submissions of Auguste

constituting over 200 pages.[2]  There are no material facts in dispute except as noted below.

Auguste, a 36 year old woman of Haitian descent, was first employed by the Hospital in October 1994 as a Nursing Attendant.  On or about October 22, 2000, Auguste transferred to the position of Patient Financial Advisor ("PFA").

On February 18, 2002, Auguste commenced a three-week leave of absence under the Family and Medical Leave Act ("FMLA") related to her pregnancy, and returned to work on March 11, 2002.  On May 22, 2002, Auguste commenced a second leave of absence under the FMLA, which was subsequently extended.

According to Defendant, on November 11, 2002, the Hospital terminated Auguste's employment due to Auguste's

---

[2] In light of her pro se status, Auguste's failure to submit a proper Local Civil Rule 56.1 Statement is not fatal to her opposition here. See, e.g., McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 693 n.2 (S.D.N.Y. 1999) (noting that, despite the failings of the pro se plaintiff's purported Local Civil Rule 56.1 Statement, "it is well settled that a pro se's papers are to be read liberally," and concluding that, "to the extent that [the plaintiff] sets forth facts based upon personal knowledge in his signed briefs, his affidavits and his Rule 56.1 Statement, the Court will consider those facts and will not deem admitted contrary facts in the [defendant's] Rule 56.1 Statement").

inability to timely return to work from her extended second leave of absence.  Auguste claims that she was in fact terminated at some point prior to her return to work on October 7, 2002, but was not made aware of her termination until November 4, 2002.

In the Fall of 2003, the Hospital was seeking to fill a vacant PFA position in its Access Unit.  Auguste was referred by the Hospital's Human Resources Department to Carol Caraway, Manager of the Access Unit ("Caraway"), to interview for the vacant PFA position.  Caraway is an African-American female.  Following the interview, Caraway hired Auguste to fill the vacant PFA position, beginning October 13, 2003.  Following her hire, Auguste was assigned to undergo an initial training period conducted by Caraway.

During Auguste's employment with the Hospital, PFAs were represented by Local 1199 SEIU (the "Union"), a labor organization.  The terms and conditions of PFA employment are set forth in the collective bargaining agreement ("CBA") between the Hospital and the Union.  Pursuant to the CBA, newly hired employees are subject to a 90-day probationary period.  Auguste disputes the Hospital's characterization of her as a newly hired

4

employee subject to the probationary period, stating rather that she was hired as a reinstated employee to whom the probationary period does not apply.

According to the Hospital, during the initial training period, Auguste demonstrated a poor knowledge of the requirements of the PFA position, resisted Caraway's efforts to assist her in improving her knowledge and occasionally engaged in behavior disruptive to the training of other PFAs. Auguste disputes this and claims that Caraway issued no verbal warnings or written documentation of any negative behavior during her employment.

During her third week of employment, Auguste called in sick on two days. The Hospital claims that on the second day of her absence, Plaintiff waited until approximately 9:30 a.m. to notify Caraway that she would be late arriving to work for her 10:00 a.m. shift, and did not appear for work that day until almost 3:00 p.m. According to Auguste, she left messages for Caraway prior to 9:00 a.m. on both days, and when she did arrive to work on the second day, she was sent home. Caraway terminated Auguste's employment with the Hospital on November 3, 2003.

5

**The Summary Judgment Standard**

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), as to every element "essential to that party's case, and on which

6

that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In the employment discrimination context, neither conclusory assertions, see Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004), nor contentions that the affidavits supporting the motion are not credible, see Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), create a genuine issue of material fact.

In determining whether a genuine issue of material fact does exist, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). Moreover, because Auguste is proceeding pro se, the Court has an obligation to "read [pro se plaintiff's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is

7

not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

**Plaintiff's Discrimination
Claims Related to the November
2003 Termination Are Dismissed**

To establish a prima facie claim of discrimination with respect to the November 2003 termination of her employment, Auguste has the initial burden of directing the Court to evidence in the record demonstrating that she: (1) is a member of a protected class; (2) was performing her job satisfactorily; (3) suffered an adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Only if Auguste meets this initial burden does the burden shift to the Hospital to produce evidence that the adverse employment action was taken for some legitimate, non-discriminatory reason. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); McDonnell Douglas Corp., 411 U.S. at 802. If the Hospital articulates a legitimate non-discriminatory reason for its action, "the presumption raised by the prima facie case is rebutted, and

8

drops from the case." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (quoting Burdine, 450 U.S. at 255 n.10). Auguste then has the ultimate burden to demonstrate by a preponderance of the evidence that the articulated reason offered by the Hospital for her termination was merely a pretext for actual discrimination. Burdine, 450 U.S. at 256 ("[Plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision."); Mandell v. County of Suffolk, 316 F.3d 368, 380 (2d Cir. 2003).

Auguste has failed to establish a prima facie case for discrimination because she has not shown that the circumstances surrounding her termination give rise to an inference of discrimination. The record contains no facts on which the Court could infer that her termination was discriminatory. During her deposition, Auguste acknowledged that she believed that the termination of her employment in November 2003, after three weeks of work, was was retaliation for her succeeding in her unemployment compensation benefits claim, rather than based on her race, color, national origin, gender, age or disability:

9

Q: Why [did you feel you were retaliated against]?

A. Because I collected unemployment insurance benefit, and against employer's will. They don't want to give it to me.

. . .

Q: . . . You just said that you think you were retaliated against because you collected unemployment insurance?

A: Yes, I feel so. Like are we going to get and teach her lesson.

Q: They're going to hire her just to fire her?

A: We're going to hire her to teach her and fire her again.

. . .

Q: You testified before that you believe that that was all done because –

A: Retaliated.

Q: because you collected unemployment insurance benefits?

A: Because I collected unemployment insurance benefit. They were angry at me.

Q: So the second time –

A: We're talking about the second time.

. . .

Q: . . . Do you think that there was any other reason, other than the fact that you collected your unemployment insurance benefits?

A: I don't see any other reason.

Post Aff., Exh. 9, at 90-91, 97-98.

Further, even if Auguste had established a prima facie case of discrimination, the Hospital has articulated a non-discriminatory reason for Auguste's termination, and so the burden again falls to Plaintiff to point to evidence indicating that the Hospital's justifications are mere pretext. "When the same actor hires a person already within the protected class, and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000) (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)). Invidious discrimination is especially unlikely "when the firing has occurred only a short time after the hiring." Grady, 130 F.3d at 560. Where, as here, the same person had ultimate responsibility for hiring and, a short time later, firing the plaintiff, the court can infer nondiscrimination. See Osborne v. Literacy Partners, Inc., No. 04 Civ. 6652 (DAB), 2007 WL 2298354, at *6 (S.D.N.Y. 2007); Ricks v. Conde Nast Publ'ns, Inc., 92 F. Supp.2d 338, 347 (S.D.N.Y. 2000), aff'd, 6 Fed. Appx. 74 (2d Cir. 2001).

Since Auguste has not presented any evidence to rebut this inference or indicate that the Hospital's non-discriminatory reason for terminating her employment in 2003 is mere pretext, her discrimination claim is dismissed.

**No Prima Facie Case of Retaliation
Has Been Established Related
to the November 2003 Termination**

In order to establish a prima facie case of retaliation, Auguste must show that (1) she engaged in protected activity; (2) the Hospital was aware of the protected activity; (3) an adverse employment action followed; and (4) a causal connection between the protected activity and the adverse employment action existed. Schiano v. Quality Payroll Sys., 445 F.3d 597, 608 (2d Cir. 2006) (citation omitted). Once Auguste has established a prima facie case, the burden again shifts to the Hospital "to articulate a legitimate, non-retaliatory reason" for her termination. Giannone v. Deutsche Bank Sec., Inc., 392 F. Supp. 2d 576, 592 (S.D.N.Y. 2005); Young v. Rogers & Wells LLP, No. 00 Civ. 8019 (GEL), 2002 WL 31496205, at *6 (S.D.N.Y. 2002). If the Hospital proffers a sufficient reason, then "the presumption of retaliation dissipates and

12

the employee must show that retaliation was a substantial reason for the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

Auguste's retaliation claim must fail because she presents no evidence that she engaged in any protected activity prior to her termination in November 2003. Section 704(a) of Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Auguste claims that she first contacted the NYCCHR in 2003, after her termination in November of that year, and she did not file a formal complaint until June 2004. Before that time, her actions with regard to the Hospital were limited to a dispute over unemployment benefits and involved limited contact with a union representative.

Again, even if Auguste could make out a prima facie case of retaliation, her claim must be dismissed

13

because she has not shown that the reason given by the Hospital for her November 2003 termination was pretextual. Here, Auguste's disagreement with Caraway's assessment of her performance is insufficient to establish pretext. There is no evidence in the record, other than Auguste's unsupported assertions, that retaliation played any role in her termination. Indeed, poor work performance has often been recognized as a legitimate, non-discriminatory reason for termination in this context. See, e.g., Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (affirming summary judgment for the employer where there was uncontroverted evidence that the plaintiff's work was below standard); Giannone, 392 F. Supp. 2d at 592 (finding that employee's failure to get along with her supervisor was legitimate non-discriminatory reason for termination of employment).

Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's discrimination and retaliation claims related to her November 2003 termination.

**Any Claims Relating to the November 2002 Termination Are Time-Barred**

14

Before an employee can file a discrimination or retaliation suit in court, both Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act require her to first file a charge of discrimination with the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). In New York, "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief," the charge must be filed within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). "[I]f the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162, 2166-67 (2007).

Here, Auguste filed her charge of discrimination with the NYCCHR on June 4, 2004. As such, the charge was timely filed only with respect to alleged discriminatory practices which occurred on or after August 8, 2003, or within the 300-day period preceding the filing of the charge. Auguste's claims related to her November 2003

15

termination fall within this time period, but any claims with respect to the 2002 termination of her employment are time barred.

Auguste argues that the 300 day period should not bar her claims under an equitable tolling theory. "The essence of the doctrine of equitable tolling is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." Williams v. City of New York, No. 99 Civ. 78 (NRB), 2001 WL 770933, at *3 (S.D.N.Y. July 9, 2001) (citing Dillman v. Combustion Eng'g., Inc., 784 F.2d 57, 60 (2d Cir.1986)). The doctrine is invoked only in "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir.2003) (internal citations and quotations omitted). The Court must consider whether the employee seeking the benefit of the equitable tolling doctrine "(1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Id. at 80-81 (citing Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002).

16

Here, Auguste alleges that Defendant "used trickery to prevent her from filing a timely charge" with the NYCCHR. Pl. Ltr. (Apr. 16, 2008). She claims that shortly before the 300-day period expired on her November 11, 2002 termination, the Hospital granted her an interview for a position to prevent her from filing a formal complaint.

These allegations, however, are insufficient to merit the application of the equitable tolling doctrine. Auguste has not demonstrated that she exercised reasonable diligence in pursuing her discrimination claim within the period prior to the Hospital granting her an interview, nor has she presented any evidence that the timing of her interview was anything other than a coincidence. Absent evidence of any exceptional circumstances, equitable tolling is inapplicable.

**Conclusion**

Upon the facts and conclusions set forth above, the motion of the Hospital for summary judgment is granted and the complaint is dismissed in its entirety.

It is so ordered.

**New York, N.Y.**
**January 14, 2009**

_____
ROBERT W. SWEET
U.S.D.J.